Dec. 1812.

Carroll
vs
Maydwell

Carroll's Lessee vs. Maydwell, et al.

*N H by his will in 1729, devised as follows, "Item I will to my beloved wife, F, my now dwelling plantation on called part of M's Lot, and my new plantation called H's Addition, to her and for her use without molestation, during her natural life; and after her decease to my son H, and my daughter M "Item, I will to my son H my now dwelling plantation which is called part of M's Lot, to him and his heirs for ever. Also I will that my son H to have part of that tract of land called H's Addition, adjoining to my now dwelling plantation, and to begin at," &c. "to my son H and his heirs, lawfully begotten, for ever; but and if he die without issue lawful begotten, then all this land to the next of kin." The remaining part of H's Addition he devised in tail to his daughter M. In 1771 a common recovery was suffered by H for docking the estate tail vested in him in M's Lot and H's Addition by the will of his father NH, and for limiting and assuring the same to the use of J E. F, the wife of N H, was alive and in possession of the lands devised to her for life at the time when the common recovery was suffered, and continued in possession until her death, which happened*

APPEAL from *Baltimore* County Court. This was an action of ejectment, brought to recover a tract of land called *The Addition*, otherwise called *Haile's Addition*, otherwise called *Addition*. The defendants, (now appellees,) took defence on warrant, and plots were made. 1. The plaintiff at the trial, gave in evidence, the certificate and patent of *The Addition*, surveyed on the 10th of January 1701 for, and granted the 10th of October 1704 to *Nicholas Haile*; and also the will of *Nicholas Haile*, the patentee, dated the 27th of February 1729, containing, among others, the following devises:. "*Item.* I will to my beloved wife *Frances Haile*, my now dwelling plantation called part of *Merryman's Lot*, and my new plantation called *Haile's Addition*, to her and for her use, without molestation, during her natural life; and after her decease to my son *Neale Haile*, and my daughter *Mary Haile*. *Item.* I will to my son *Neale Haile* my now dwelling plantation, which is called part of *Merryman's Lot*, to him and his heirs for ever; also I will that my son *Neale Haile*, to have part of that tract of land called *Haile's Addition*, adjoining to my now dwelling plantation, and to begin at a great stone standing by the great run of this tract, and to run with a straight line to a bounded black oak standing on the land called *Haile's Addition*, to my son *Neale Haile*, and his heirs lawfully begotten, for ever; but and if he die without issue lawfully begotten, then all this land to the next of kin. *Item.* I also will that my eldest daughter *Mary Haile*, shall have all the remainder part of that tract of land called *Haile's Addition*, to her and her heirs of her body lawfully begotten for ever; but and if she die without issue lawfully begotten, then that land to the next of kin." He also gave in evidence a deed tripartite, dated the 11th of April 1771, between *Neale Haile*, the devisee in the said will, on the one part, and *Joseph Ensor* of the other

after the death of F.—*Held*, that F, the wife of N H, took a life estate in the lands devised to her, and that H, the son, took an estate tail in remainder—*Held* also, that the common recovery suffered by H was defective there being no legal surrender of the life estate; and that the facts and circumstances disclosed were not a sufficient foundation, to presume that there had been a surrender of the life estate by the tenant for life.

*Held* also, that the deed of 1771 for leading uses for suffering the common recovery and vesting the estate in J E, did not pass to and vest in J E, a base fee simple in the lands, notwithstanding H being dead, and though there was no proof of entry into the lands, or action to claim therefor by his issue, or any person claiming under them.

*Held* also, that the deed of confirmation in 1789, by H to M, who was appointed by an act of assembly a trustee of L E, an ideot, son of J E, and the deed in 1794, by M, to the lessor of the plaintiff, were operative in law to vest in the lessor of the plaintiff an estate in fee simple in the land.

*Querg.* Whether or not lands will pass by a parol exchange?

part, and *William Cooke* of the third part, being a deed leading uses for suffering a common recovery for "docking, destroying and extinguishing, all estates tail, and all reversions, remainders, thereupon expectant or depending, of and in 105 acres of land, lately the dwelling plantation of *Nicholas Haile*, deceased, being part of a tract or parcel of land called *Merryman's Lot*, lying in *Baltimore* county; also 30 acres of land lying in the same county, being part of a tract or parcel of land called *Haile's Addition*, adjoining to the said dwelling plantation of *Nicholas Haile*, and which were devised to the said *Neale Haile* by his father *Nicholas Haile*; and for limiting and assuring the same unto and to the use of the said *Joseph Ensor*, his heirs and assigns," &c. "The said recovery to ensure, and the recoverer to stand seized of the premises to the use of the said *Joseph Ensor*, his heirs and assigns, for ever." And also a common recovery suffered of the said lands, by *Neale Haile* to *Joseph Ensor*, in the provincial court at April term 1771, in pursuance of the above mentioned deed. He also gave in evidence, that the land called *Haile's Addition*, in the said will, deed, and common recovery mentioned, and the land called *The Addition* in the said patent mentioned, is the same land, and that it was and is commonly known by the name of *Haile's Addition*. And also gave in evidence the plots in this cause; and that the locations made thereon by him were true. He also gave in evidence a deed of indenture from *Joseph Ensor*, in the common recovery mentioned, to the lessor of the plaintiff, for the said lands, dated the 27th of June 1771. The defendants then gave in evidence, by consent, the deposition of *Benjamin Long*, taken in a former action relative to the lands claimed in this action. This deposition, (taken on the survey in the case of *Merryman* and others against *Maydwell*, and sworn to in open court on the 15th of November 1788,) states, that he the deponent, (aged 71 years,) bought a tract of land called *The Forrest*, of *W. Worthington*, of the quantity of 200 acres; that *William Carter* agreed with the deponent for half the said land, on condition that the said *Carter* paid to *Worthington* £10 sterling; before the land was made over to the deponent, *Carter* exchanged his part with *Neale Haile* for the land that said *Haile* then lived on, with his mother, which is the land in dispute. That then *Carter* moved from the place

he then lived to the place that he had of *Neale Haile*, and *Neale Haile* moved to the place he had of *Carter*. That he understood from *Haile* that he gave *Carter* a bond of conveyance for the said land. That *Haile*, about 8 or 10 years after the exchange, told the deponent he did not know whether he would make over the land to *Carter*, as he thought the land was worth more than the penalty of the bond. That *Carter*, a few months before his death, told the deponent he never gave *Haile* liberty to make over the said land to *Joseph Ensor*. That the deponent assisted to build the house shown to the sheriff and surveyor, which house *Carter* moved into and lived with *Neale Haile's* mother, until he built a house for himself; and that *Carter* lived at the said place in the hard winter, which the deponent thinks was about 1740, and that he never understood but that the said *Carter* was in quiet and peaceable possession, until his death. The defendant also gave in evidence, that *Frances Haile*, the wife of *Nicholas Haile*, the devisor and patentee, in the said will mentioned, was alive and in possession of the said lands, which are part of the same that were devised to her by the will of *Nicholas Haile*, during her life, at the time when the said common recovery was suffered, and long after. And that *William Carter*, owning two tracts of land in *Baltimore* county, called *The Forrest* or *The Forrest Resurveyed*, did in the fall of the year 1739, exchange and swap the said lands with *Neale Haile*, for those parts of *Merryman's Lot*, and *The Addition*, or *Haile's Addition*, which were devised to him by the will of *Nicholas Haile*, and that each of the said parties respectively delivered to the other the possession of the lands which they had thus exchanged, in the latter end of the fall of 1739, or the beginning of the year 1740. That *William Carter*, and his family, lived in the same house with *Frances Haile*, the devisee for life under the will of *Nicholas Haile*, during that winter, and in the spring he built himself a house on said land, and began to clear and cultivate the same, and continued in the undisturbed possession of the same from that time until about the year 1778, with the approbation and consent of *Frances Haile*, the tenant for life, when he removed away, and *Joseph Ensor*, under a contract of purchase from *Carter*, entered into possession of the place. That *Joseph Ensor*, if he ever paid any part of the consideration which he was to have paid

to *Carter* for the said land, altogether failed to pay a considerable portion of it. That about the time of the death of *Joseph Ensor*, which happened sometime about the year 1779 or 1780, *Carter* returned and took possession of the said land again; and that *Carter*, and the defendants claiming under him, have been in the peaceable possession of the lands, for which this ejectment is brought, from that time till the institution of this suit. The plaintiff then further gave in evidence, the deposition of *George Chiles*, taken by consent, and admitted in evidence, and all and singular the matters therein contained, (subject to the same legal exceptions which might be made to it, if the facts were given in evidence by the deponent in person,) to prove that *Frances Haile* did surrender her life estate in the said lands to *Neale Haile*, at or before the time of suffering the said common recovery, and that *Joseph Ensor* entered into and held possession of the said land, under the said common recovery, by and with the assent of *Frances Haile*, and did pay to her a valuable consideration for the said surrender and assent; and that the said common recovery was suffered, and the said possession under it taken and ~~held~~, by and with the assent of *William Carter*, in the said deposition of *Benjamin Long* mentioned, under whom the defendants claim. This deposition of *George Chiles*, aged upwards of 74 years, was taken on the 4th of May 1807, and stated, "that he was well acquainted with a parcel of land called *The Addition*, or *Haile's Addition*, in *Baltimore* county, which was part of the dwelling plantation of *Nicholas Haile*, deceased, and was by him devised, as this deponent understood, to his son *Neale Haile*; and that he was also well acquainted with the said *Neale Haile*, and with *Frances Haile* the widow of the said *Nicholas Haile*, deceased, and with *Joseph Ensor*, late of *Baltimore* county, deceased, and *William Carter*, also of the said county, deceased, whose daughter he this deponent married. That he knew the tract of land in *Baltimore* county called *Merryman's Lot*, adjoining the tract called *The Addition*, or *Haile's Addition*; and that the dwelling plantation of *Nicholas Haile* was chiefly on the tract called *Merryman's Lot*, and included also a part of the tract called *The Addition*, or *Haile's Addition*; and that when he first became acquainted with the said lands, and the said *Frances Haile*, she lived in a house

on *Merryman's Lot*, which was then said to have been the dwelling-house of her husband *Nicholas Haile.* That about 36 years ago he first became acquainted with *William Carter*, who then resided on the said dwelling plantation, and claimed it as his own under a purchase from *Neale Haile;* and he hath frequently heard *Carter* say that he had never obtained a conveyance from *Neale Haile,* some difference having arisen between them respecting a tract of land which he had given to *Neale Haile*, in payment or exchange for the said plantation. That about two years or a year and a half after, he so became acquainted with *Carter*, he married the daughter of *Carter*, and about two years after his marriage, went to live with the said *Joseph Ensor*, as his overseer. That after living with *Ensor* in this manner one year, *Ensor* purchased from *Carter* the aforesaid dwelling plantation, consisting of part of *Merryman's Lot*, and part of *The Addition*, or *Haile's Addition;* immediately after which *Carter* put *Ensor* into possession of said plantation, and removed away from it; that *Ensor* thereupon put this deponent on said plantation as his overseer, with two horses, one cow, and one slave, to cultivate it. That he does not know what sum *Ensor* agreed to pay for the said plantation, but perfectly recollects, that at the time of the purchase he paid and delivered to *Carter* a negro woman slave in part payment, but does not remember at what price. That about one year, or something less, after he went to live on said plantation as overseer, *Ensor* being desirous of obtaining a conveyance of the said land and plantation from *Neale Haile*, applied to *Carter* for his consent that such a conveyance should be made, to which *Carter* consented, observing that *Haile's* deed or conveyance would be as good as his own; on which *Ensor* answered, that it would be better. That this deponent was called as a witness to this conversation, which took place at *Ensor's* house. That *Ensor* at the same time informed *Carter* that *Haile* demanded from him £30 for making the said conveyance, which he thought very hard, as the land had already been sold to him; to which *Carter* replied, that he could not help it; and that he *Ensor* and *Haile* must settle that matter between them. That soon after this transaction, *Neale Haile* came to the house of *Ensor* for the purpose of going with him to *Annapolis* to make the above mentioned con-

veyance. That *Frances Haile*, who then resided on the said plantation, and in the house which had been her said husband's dwelling house, as this deponent always understood, and who was then, as this deponent understood and believes, upwards of 90 years old, went with them to *Baltimore*-town, on their way to *Annapolis*, for the purpose, as this deponent understood, of making over, before a magistrate, her right to the said land and plantation, so as to enable *Neale Haile*, her son, to convey it to *Ensor*. That this deponent did not go before the magistrate, but knows that *Neale Haile*, *Ensor* and *Frances*, did go together for the above purpose, as they said; and that this deponent's wife, who was the granddaughter of *Frances*, together with several other of her grandchildren, did accompany her. That they went, as this deponent understood, before *William Aisquith*, then a justice of the peace for *Baltimore* county, and now deceased. That this deponent saw them return, and understood from them that a paper had been signed by *Frances*, before the said magistrate, for the above mentioned purpose. That after their return *Frances* went back to her house; and *Ensor* and *Neale Haile*, with this deponent, and several other persons, then proceeded to *Annapolis* to have the conveyance completed, which however was not done at that time, which, as well as this deponent recollects, was in the fall of the year; and that in the spring following, they went again to *Annapolis* for the same purpose, when the said conveyance was executed, for which *Ensor* agreed to pay *Haile* £35, *Haile* having increased his demand from £30 to £35. That while *Carter* lived on the said plantation, after this deponent became acquainted with him, *Frances Haile* had a separate part of the land in her sole occupation, which she usually rented out; and that all the rest of the land was held and occupied by *Carter*. That when *Carter* sold to *Ensor*, and *Ensor* placed this deponent on the plantation, he took the whole of the land into his possession, and directed this deponent to pay her £5 per annum, to go to mill for her, to bring and cut her fire-wood, and to render her other services of this nature, as long as she should live, and choose to remain there. That in pursuance of these orders he did, for three years, pay her £5 per annum in necessaries, which he purchased for her use, and did perform for her the said services to the value, as he believes,

1812.

Carroll
vs
Slaydwell

of £10 per annum more. That she always received the said payments and supplies, of which this deponent kept an account, but never heard her say, nor mentioned to her particularly, what they were for; nor does he know that the said directions were given to him by *Ensor* in consequence of any agreement with her; and that at or about the end of the said three years, her house was burnt down, on which her son *George Haile* came and took her away; and after which the said payments, supplies and services, were discontinued, *Ensor* being then dead. That some time before the death of *Ensor*, and after they went to *Annapolis* the second time, when the conveyance was made by *Neale Haile* to *Ensor*; he heard *Carter* apply to *Ensor* for payment of the balance due to him for the said land, on which *Ensor* asked him how much was due, and he replied £70; and that *Ensor* then said, that he could not pay till the fall, but would then discharge the whole debt; That after *Ensor's* death he remained on the said plantation about three or four years, as a tenant, and paid rent to the guardian of *Ensor's* sons; and that at the end of this time, *Carter* came and took possession of the place, alleging that £70 of the purchase money was due to him from *Ensor*, or his heirs, and that he would keep the place till it was paid. That he does not recollect the year or precise time at which any of the above mentioned events took place, further than he hath stated above. And further, that when he, on going to live on the said plantation, as above stated, took possession of the whole of it for *Ensor*, including that part which had before been solely occupied by *Frances Haile*, she made no objection thereto, nor did she ever afterwards object thereto, but always received the above mentioned payments and services as her right." The defendant then prayed the court to direct the jury, that the plaintiff had not made title to the lands in question. And the Court, [*Nicholson*, Ch. J. and *Jones*, A. J.] did direct the jury, that the common recovery was defective, there being no legal surrender of the life estate, and of course that the plaintiff had not made title, and could not recover in this action. The plaintiff excepted.

2. The plaintiff then gave in evidence, that *Frances Haile* died while *Ensor*, and those claiming under him, were in possession of the said lands. And the defendants gave in evidence, that *Frances Haile* continued in posses-

1812.
Carroll
vs.
Maydwell

sion of the said land until the time of her death, which happened after the death of *Ensor.* The plaintiff then prayed the opinion of the court, and their direction to the jury, that the deed of indenture tripartite, of the 11th of April 1771, passed to and vested in *Joseph Ensor* a base fee simple in the lands in the declaration mentioned; and that *Neale Haile* being now dead, and there being no proof of an entry into the said lands, or action to claim therefor by his issue, or any person claiming under them, the said base fee passed to the plaintiff's lessor by virtue of the said deed of indenture from *Ensor* to him, and will enable the plaintiff to maintain this action. This opinion the court refused to give. The plaintiff excepted.

3. The plaintiff then gave in evidence an indenture of and for the lands in the declaration mentioned, from *Neale Haile* the devisee in the will of *Nicholas Haile,* to *Elijah Merryman* and *David M'Mechen,* dated the 5th of September 1789, and also a deed of indenture of and for the said lands, from said *David M'Mechen* and *Elijah Merryman,* to the lessor of the plaintiff, dated the 1st of May 1794. The former of the said deeds recited, that *Neale Haile,* in the year 1771, did convey to *Joseph Ensor,* in fee simple, part of two tracts of land situate in *Baltimore* county, one called *Merryman's Lot,* and the other *Addition,* commonly called *Haile's Addition.* That the said *Merryman* and *M'Mechen* were appointed trustees of *Joseph Ensor,* an idiot, the son of the first named *Joseph Ensor,* by act of assembly, and the said lands were vested in them by the said act. That there were defects in the said deed from the said *Haile* to the said *Ensor,* and doubts whether the fee in the said lands was not still remaining in the said *Haile;* and for confirmation of the said title, and aid defects, and to bar the estate in tail, the said *Neale Haile* agreed to execute the said deed. He did, therefore, in consideration of the premises, and of five shillings, &c. grant, &c. the said lands, &c. unto the said *Merryman* and *M'Mechen,* in trust for the said *Joseph Ensor,* the idiot, and subject to a mortgage from the said *Joseph Ensor* to the lessor of the plaintiff. The defendant then gave in evidence an act of assembly, passed at April session 1783, *ch.* 13, appointing the said *Merryman* and *M'Mechen* trustees of the person and estate of *Joseph Ensor,* an idiot, the son and heir at law of the said *Joseph Ensor,*

deceased. Whereupon the plaintiff prayed the direction of the court to the jury, that the said last mentioned deeds are good and operative in law to vest in the lessor of the plaintiff an estate in fee simple in the lands aforesaid. Which opinion and direction the court also refused to give. The plaintiff excepted; and the verdict and judgment being for the defendants, he appealed to this court.

The cause was argued at June term 1811, before CHASE, Ch. J. and BUCHANAN, EARLE, and JOHNSON, J.

*Key* and *Harper*, for the Appellant, contended, on the *first* bill of exceptions, 1. That *Frances Haile* had not a life estate under the will of *Nicholas Haile*, but that *Neale Haile* took an immediate estate tail in possession. 2. That the common recovery was valid, because the life estate of *Frances Haile*, if she took such an estate, ought, in point of law, to be presumed to have been surrendered by her to *Neale Haile*, or to *Carter*, and extinguished; or that it should have been left to the jury for them to presume, whether or not there had been such a surrender, from the facts and circumstances disclosed in evidence. Upon the doctrine of presumption, they referred to *Warren vs. Greenville*, 2 *Stra.* 1129. *Goodtitle vs. Chandos*, 2 *Burr.* 1065. *Earl vs. Baxter*, 2 *W. Blk. Rep.* 1228. *Mayor of Hull vs. Horner*, *Cowp.* 104, 105. *Eldridge vs. Knott*, *Ibid* 214, 216. *Wilkinson vs. Payne*, 4 *T. R.* 469. *England vs. Slade*, *Ibid* 682. *Doe vs. Sybourn*, 7 *T. R.* 2, 3. *Campbell vs. Wilson*, 3 *East*, 297. *The King vs. The Inhabitants of Long Buckby*, 7 *East*, 45. *Daniel vs. North*, 11 *East*, 371, 374, (note). *Bull. N. P.* 110. 1 *Esp. Dig.* 254. 2 *Esp. Dig.* 173. *Beedle & Beard's case*, 12 *Coke*, 4, 5; and *Gittings's Lessee vs. Hall* 1 *Harr. & Johns* 18.

The *second* bill of exceptions was waived.

On the *third* bill of exceptions, they referred to the act of 1782, *ch.* 23, under which a common deed of bargain and sale may dock an estate tail, and cited *Laidler vs. Young's Lessee*, 2 *Harr. & Johns.* 69. *Jones et al. vs. Jones*, ibid 281. *Saunders vs. Simpson*, 2 *Harr. & Johns.* 82, (note).

*Martin* and *Winder*, for the Appellees, on the *first* bill of exceptions, contended, 1. That *Nicholas Haile* devised a life-estate to his wife *Frances Haile*, with remainder in

tail to his son *Neale,(a.)* 2. That presumptions have always been made to confirm and not to disturb possession. That in this case there was not the requisite possession to lay the foundation for presuming a surrender. That the court were correct in not directing the jury, or in leaving it to them, to presume the surrender, even if they thought there had been one. It was for the court to say whether the facts found amounted in law to a surrender. They referred to *Carroll, et al. Lessee, vs. Norwood,* 4 *Harr. & M'Hen.* 287; and 2 *Blk. Com.* 150, 158.

On the *third* bill of exceptions, they contended, 1. That the conveyance to *Merryman* and *M'Mechen* was to them as trustees of *Ensor,* the idiot, and that they were not authorised by the act of April 1783, *ch.* 13, appointing them trustees, to part with the estate, except in the mode pointed out by that act. 2. That *Neale Haile* contracted with *Carter* by way of exchange; and that a tenant in tail could part with his estate by exchange; and that *Carter,* by the exchange with *Neale Haile,* obtained a legal estate in the lands. To prove that an exchange might be by parol, they cited *Co. Litt.* s. 62. *Perkins,* s. 244, s. 279, s. 285. *Co. Litt.* 50, b, s. 64, 66, 51. a. 10 *Vin. Ab.* 128, pl. 4, 129, 132, pl. 12, 134, 138, pl. 1, 4, 5. *Muchil vs. Clerk,* 7 *Mod.* 25. *Jenkins,* 124, 249; and *The Stat. Frauds,* 29 *Car.* II, *ch.* 3, *s.* 1.

*Key* and *Harper,* in reply, as to exchange of lands by parol, referred to *Coke Litt.* s. 62. 2 *Blk. Com.* 294, 297; and 4 *Bac. Ab.* 494.

                              *Curia adv. vult.*

CHASE, Ch. J. at this term, delivered the opinion of the court, stating that the court concurred with the County Court as to the opinions in the *first* and *second* bills of exceptions, but dissented as to the opinion in the *third* bill of exceptions.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

*(a)* CHASE, Ch. J. The Court are satisfied that Mrs. *Haile* took a life-estate in the whole lands devised to her, and that *Neale Haile,* the son, took an estate tail in remainder.